**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MICHAEL PEYLA, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 07-CV-579-MJR |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge**:

## I. Introduction

Michael Peyla petitions this Court to vacate, set aside, or correct his sentence pursuant to **28 U.S.C. § 2255**. Having closely examined the record before it, the Court concludes that an evidentiary hearing is not needed on Peyla's § 2255 petition. *See Galbraith v. United States*, **313 F.3d 1001, 1009 (7th Cir. 2002) (to obtain evidentiary hearing, § 2255 movant must file detailed and specific affidavit showing he has actual proof of allegations he is making);** *Menzer v. United States*, **200 F.3d 1000, 1005 (7th Cir. 2002) (hearing not required where record conclusively demonstrates that defendant is entitled to no relief on § 2255 motion).** *See also* **Rule 4(b) and 8(a) of RULES GOVERNING SECTION 2255 PROCEEDINGS.**

Accordingly, the Court now rules on Peyla's § 2255 petition, beginning with a summary of the procedural history of the case and a recitation of the key facts.

## II. Procedural Background

On July 21, 2004, Peyla was charged, by way of a second superceding indictment, with conspiracy to distribute and possess with intent to distribute 1,000 kilograms or more of

1

marijuana, in violation of 21 U.S.C. § 846 (Count I), and with possession with intent to distribute over 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count II). On August 8, 2005, Peyla entered into an open plea. A two-day sentencing hearing (February 23 and 24, 2006) involved testimony by Peyla and three of his co-conspirators - Jack Williams, Edward Trober and Thomas Dukeman - who testified regarding Peyla's role in the offense. On February 24th, the Court sentenced Peyla to 150 months' imprisonment, five years' supervised release, a fine of $6,000 and a special assessment of $200.

Peyla appealed his sentence to the Seventh Circuit, which allowed trial counsel to withdraw and appointed counsel to represent Peyla for purposes of appeal. The appellate counsel filed a brief pursuant to ***Anders v. California*, 386 U.S. 783 (1967)**, in which he argued that (1) there were no non-frivolous issues regarding Peyla's guilty plea where Peyla did not seek to withdraw his plea in the district court and advised appellate counsel that he did not wish to do so; and (2) any argument challenging Peyla's sentence would be frivolous where his sentence was not imposed in violation of the law, was not the result of an incorrect application of the Guidelines and was not the result of an unreasonable departure from the Guidelines. Doc. 7, Exhibit A.

The Seventh Circuit issued an order directing Peyla to state any basis that would warrant setting aside his conviction. Doc. 7, Exhibit B. Peyla failed to do so, and the appeal was dismissed on December 12, 2006, with an opinion based on the *Anders* brief. ***United States v. Peyla*, 208 Fed.Appx. 472 (7th Cir. 2006)**, *cert. denied*, **127 S.Ct. 2056 (2007)**, *reh'g denied*, **127 S.Ct. 2908 (2007).**

On August 13, 2007, Peyla filed the instant § 2255 petition arguing that his sentence was improperly imposed. Peyla's § 2255 petition advances four related claims: (1) trial counsel was

ineffective in failing to properly advise him of the risks of testifying at his sentencing hearing; (2) trial counsel was ineffective during plea negotiations; (3) trial counsel was ineffective in advising him to reject the Government's sentencing offer; and (4) his sentence was imposed in violation of his right to proof of all factors beyond a reasonable doubt. But for these circumstances, claims Peyla, he would have either taken a plea agreement or refrained from taking the stand at his sentencing hearing.

Having carefully reviewed the arguments and evidence, and for the reasons stated below, the Court finds that Peyla is not entitled to relief under § 2255.

## II. Analysis

28 U.S.C. § 2255 authorizes a federal prisoner to ask the court which sentenced him to vacate, set aside, or correct his sentence, if "the sentence was imposed in violation of the Constitution or laws of the United States, or ... the court was without jurisdiction to impose such sentence, or ... the sentence was in excess of the maximum authorized by law...." **28 U.S.C. § 2255**. Relief under § 2255 is limited. Unlike a direct appeal, in which a defendant may complain of nearly any error, § 2255 proceedings may be used only to correct errors that vitiate the sentencing court's jurisdiction or are otherwise "of constitutional magnitude." *Guinan v. United States*, **6 F.3d 468, 470 (7th Cir. 1993).** *Accord Corcoran v. Sullivan*, **112 F.3d 836, 837 (7th Cir. 1997)(§ 2255 relief is available only to correct "fundamental errors in the criminal process").**

The Seventh Circuit has declared that § 2255 relief "is appropriate only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States,* **366 F.3d 593, 594 (7th Cir. 2004),** *citing Borre v. United States,* **940 F.2d 215, 217 (7th Cir. 1991).** *Accord Prewitt v. United*

3

*States,* **83 F.3d 812, 816 (7th Cir. 1996) ("relief under 28 U.S.C. § 2255 is reserved for extraordinary situations").** Section 2255 can be used neither as a substitute for a direct appeal nor to re-litigate issues already raised on direct appeal. *Coleman v. United States,* **318 F.3d 754, 760 (7th Cir. 2003),** *cert. denied,* **540 U.S. 926 (2003).**

Furthermore, a § 2255 petitioner is usually barred from raising issues in a § 2255 petition which could have been, but were not, raised on direct appeal. In this case, however, Peyla is not barred from raising the issue of ineffective assistance of counsel in his § 2255 petition because an ineffective assistance of counsel claim is properly brought in a § 2255 proceeding. *Massaro v. United States***, 538 U.S. 500, 504 (2003) (holding "that an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal.").**

Under Seventh Circuit law, counsel is presumed effective and a petitioner "bears a heavy burden in making out a winning claim based on ineffective assistance of counsel." *United States v. Trevino***, 60 F.3d 333, 338 (7th Cir. 1995).** To succeed, a § 2255 petitioner must show that his counsel's performance fell below an objective standard of reasonableness and that this deficient performance so prejudiced his defense that he was deprived of a fair trial. *Id.***,** *citing Strickland v. Washington***, 466 U.S. 668, 668-94 (1984).** Stated another way, under the *Strickland* test, the petitioner must show that his counsel's actions were not supported by a reasonable strategy and that the error was prejudicial. *Massaro***, 538 U.S. at 501 (2003).**

The first prong of the *Strickland* test, the "performance" prong, calls for the petitioner to direct the Court to specific acts or omissions forming the basis of his claims. *Trevino***, 60 F.3d at 338,** *citing Strickland***, 466 U.S. at 690.** The Court then must determine whether, in light

4

of all the circumstances, those acts or omissions fell "outside the wide range of professionally competent assistance." *Id.* While making this assessment, the Court must be "mindful of the strong presumption that counsel's performance was reasonable." *Id. Accord Fountain v. United States*, **211 F.3d 429, 434 (7th Cir. 2000) (counsel is *presumed* effective, and court must bear this in mind when determining whether the allegedly deficient actions of counsel "were outside the wide range of professionally competent assistance.")**

If the petitioner satisfies the performance prong, he must then meet the prejudice prong of *Strickland*. This requires the petitioner to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Emezuo v. United States*, **357 F.3d 703, 707-08 (7th Cir. 2004),** *citing Strickland*, **466 U.S. at 694.** A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.*

### A. <u>Failure to Explain the Risks of Testifying</u>

In order to overturn his conviction, Peyla first contends that his trial counsel, Mr. Frederick J. Hess, failed to explain the risks of testifying to him. Peyla asserts that, but for trial counsel's conduct, he would not have testified at his sentencing hearing, which would have resulted in his being sentenced to 87 months instead of 150 months. To prevail on this issue - as on all of Peyla's ineffective assistance of counsel claims - Peyla must (1) demonstrate that trial counsel's performance fell below an objective standard of reasonableness and (2) demonstrate that, but for trial counsel's deficient performance, he would have received a lighter sentence.

It is well established that a defendant has the ultimate authority regarding the decision to testify and a constitutional right to testify if he so chooses. *Jones v. Barnes*, **463 U.S. 745 (1983).**

5

There is, however, no constitutional right to commit perjury. ***United States v. Grayson*, 438 U.S. 41, 54 (1978)**. "Whatever the scope of a constitutional right to testify, it is elementary that such a right does not extend to testifying *falsely*. **Nix v. Whiteside, 475 U.S. 157, 173 (1986)(emphasis in original)**. "Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully...." ***Id., quoting Harris v. New York*, 401 U.S. 222, 225 (1971)**.

By affidavit, Hess asserts that it was Peyla who insisted on testifying even though Hess explained the risks to him.

> Mr. Peyla made the decision to plead guilty and testify in his own behalf at the sentencing hearing. He wanted his story told and presented to the Court. The Court simply did not believe him. The course of action taken by the fully advised defendant did not result in the outcome he envisioned. He was made aware of the risks in his choices, including his desire to testify during sentencing, but he elected to take the stand over advise [sic] of counsel, which was his right. Had the Court believed his testimony or had he remained silent at sentencing, the outcome could have been different. Because he testified as he did, he received the sentence imposed and affirmed on appeal. Doc. 7, Exhibit C, Hess Affidavit, ¶ 3 ("Hess Aff.").

Hess asserts that he warned Peyla of the risks of choosing to testify, but Peyla took the stand in spite of his advice because he wanted to tell his story. According to Hess, Peyla insisted on testifying and did so to his detriment.

Peyla maintains that Hess did not advise him of the risks of testifying, especially that he could be exposed to a higher sentence if the Court did not believe him. Doc. 1, Att. 2, Peyla Affidavit, ¶ 3 ("Peyla Aff."). Peyla also asserts that Hess did not advise him that it was his decision whether or not to testify and that Hess told him that he had to testify to avoid receiving a sentence of 10 years or more. *Id.*

Peyla testified at his sentencing hearing, but the testimony of his co-conspirators contradicted his testimony. The Court concluded that Peyla repeatedly lied under oath and

6

explained at the sentencing hearing that Peyla's sentence was enhanced by 63 months because he obstructed justice. (Sentencing Hearing Transcript, p. 274).

Peyla's claims are insufficient to overcome the strong presumption that his counsel's performance was reasonable and effective. Peyla had no constitutional right to testify falsely, and it may be fairly said that he alone is at fault for the lies which led to his sentence being enhanced for obstruction of justice.

Peyla's only remaining argument must be that Hess failed to properly warn him about the risks of lying during his testimony. To challenge counsel's performance during sentencing, a petitioner must show by way of objective evidence that he would have received a shorter sentence but for counsel's deficient action or failure to act. ***Glover v. United States*, 531 U.S. 198, 202-04 (2001)**. In Peyla's petition, he offers nothing more than mere self-serving statements to bolster his claim of Hess's failure to warn him about lying - or actually encouraging him to lie. ***See Toro v. Fairman*, 940 F.2d 1065 (7th Cir. 1991) (ineffective assistance of counsel claim must be established by objective evidence and not merely by self-serving statements made by movant alone)**. He states that Hess repeatedly told him "that he had to testify during sentencing and that he had to tell that Court that his role in this conspiracy was limited to the May 3, 2003 incident, and that if he did so, [he] would be sentenced to probation." Doc. 1, Att 1, Procedural Statement, p. 18. As stated above, Peyla offers his affidavit, in which he avers that Hess did not advise him of the risks of testifying or inform him that it was the decision to testify was his; however, he does not assert that Hess told him to lie under oath. Peyla Aff. This is the extent of the "evidence" that Peyla offers, and it is not enough. Ultimately, it was not that Peyla testified that caused his sentence to be enhanced but that he lied under oath. It is eminently unreasonable for Peyla to believe that he could

7

take the stand, swear to tell the truth and then repeatedly lie without its having an impact on his sentence. As set forth above, Peyla has no constitutional right to commit perjury. **Grayson, 438 U.S. at 54**. As a result, the Court's enhancing Peyla's sentence under Guidelines § 3C1.1for committing perjury cannot be an error "of constitutional magnitude" such that he would be entitled to relief under § 2255.[1] **Guinan, 6 F.3d at 470**. Accordingly, Peyla's first ineffective assistance of counsel claim must be dismissed.

### B. Ineffective Assistance During Plea Negotiations

Peyla's second ineffective assistance of counsel claim is that trial counsel was ineffective during plea negotiations. Peyla argues that trial counsel failed to properly explain and provide advice about the Government's proposed plea agreements.

Defense counsel are ordinarily required to inform their clients of plea agreements offered by the Government. **Johnson v. Duckworth, 793 F.2d 898, 902 (7th Cir. 1986)**. Furthermore, a defendant must be "must be involved in the decision-making process regarding the agreement's ultimate acceptance or rejection." ***Id.***

Peyla fails to satisfy the first prong of the ***Strickland*** test with regard to the plea

---

[1]"Guidelines § 3C1.1 provides: 'If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels.' Application Note 1, which spells out the kind of conduct that is the target of this guideline, includes at subsection (c) 'testifying untruthfully or suborning untruthful testimony concerning a material fact ... during a preliminary or grand jury proceeding, trial, sentencing proceeding, or any other judicial proceeding." Application Note 2 directs courts to evaluate 'suspect testimony and statements' in the light most favorable to the defendant when applying this guideline, and Note 3 explains, 'This provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt is not a basis for application of this provision.'" **United States v. Contreras, 937 F.2d 1191, 1193-94 (7th Cir. 1991)**.

negotiations. As to this issue, Hess declares as follows:

> All Plea Agreements, proffered by the prosecution, were presented to the defendant and rejected by him. The defendant made all decisions to reject the government's offers. His decisions were made after counsel explained the offers and the expectation incident to each. Collateral consequences to the defendant and others were always discussed. In the end, at the defendant's direction, counsel proceeded. Hess Aff. ¶ 4.

Moreover, by Peyla's own admission, Hess kept him informed of plea negotiations: "Whenever counsel mentioned the government's offer, Mr. Peyla asked counsel for advice on whether to accept the offer." (Doc 1, p. 22). In Peyla's affidavit, he states that he discussed with Hess "the government's previous plea agreement offer" and the Government's offer of a three-year sentence in exchange for testimony against co-defendants. Peyla Aff. ¶¶ 4, 5. These statements demonstrate that Peyla was involved in the decision making process and, critically, that Peyla retained the discretion to accept the agreement. Peyla contends, however, that Hess did not discuss with him the advantages of accepting the Government's proposed plea agreement or gave him incorrect information regarding the likelihood of his conviction and his "sentencing exposure." *Id*.

The glaring unanswered question in Peyla's argument is why he made no complaint to the Court at the time he entered his guilty plea if Hess's performance was deficient. "Due process requires that a guilty plea be made voluntarily, intelligently and knowingly, to be valid." ***United States v. Iovine,* 2004 WL 2535272, 5 (N.D.Ill. 2004)*, citing Galbraith,* 313 F.3d at 1006, *citing Brady v. United States*, 397 U.S. 742, 747 (1970)**. "A plea is voluntary in the constitutional sense if it is 'entered by one fully aware of the direct consequences' of the plea and is not induced by threats, misrepresentation, or improper promises (e.g., bribes)." ***Id. citing Brady,* 397 U.S. at 755**.

Under oath, Peyla denied that anyone, including his attorney, had "made any promises or assurances or guarantees" to him in order to induce him to plead guilty. Plea at 6, 7.

Peyla stated that he was "fully satisfied with the counsel, representation, and advice" that Hess had given him regarding his case and that there was nothing Hess had "refused to do or been unwilling or unable to do" regarding his defense. *Id.* at 4, 5. The Court fully informed Peyla at the plea hearing of the maximum penalties that he faced and that his "best case scenario" was five years' imprisonment and "worst case scenario," life imprisonment. *Id*. at 11-12. Peyla repeatedly responded that he understood the Court's advisements.

Peyla's guilty plea met the requirements of due process and was valid. He fails to meet the first prong of the ***Strickland*** test because his own statements coupled with Hess's affidavit make clear that Hess's performance was objectively reasonable.

Assuming, *arguendo*, that Peyla satisfied the first prong of the ***Strickland*** test, his claim still fails because he cannot meet the prejudice prong of the test. Peyla is unable to demonstrate that, but for trial counsel's performance, he would have received a lighter sentence.

Peyla claims that he would have taken a plea agreement rather than enter into an open plea agreement. As a result, according to Peyla, he would not have obstructed justice and would have received a lighter sentence. Peyla's self-serving statement that he would have accepted a plea agreement is insufficient to demonstrate prejudice. ***See Paters v. United States*, 159 F.3d 1043, 1047 (7th Cir. 1998) (self-serving statement that the defendant would have accepted the plea insufficient to demonstrate prejudice).** To be sure, Peyla is not required to show that his counsel's deficient conduct more likely than not altered the outcome in the case. ***Julian v. Bartley*, 495 F.3d 487, 500 (7th Cir. 2007).** He must, however, demonstrate that the chances of prejudice were better than negligible. *Id.* Peyla entered into a plea with full knowledge and understanding that he would be going to jail for at least five years and expressed satisfaction with Hess's representation. He fails

10

to point to any evidence, other than his own self-serving statements, to demonstrate that he would have been sentenced differently but for his counsel's conduct.

Important, too, to this analysis is that, given new appellate counsel, Peyla did not seek to withdraw his plea and told appellate counsel that he did not want to seek to vacate the plea. *See Peyla*, **208 Fed.Appx. 474 ("As an initial matter, counsel informs us that Peyla does not want his guilty plea vacated....")**. This hardly represents dissatisfaction with the plea agreement and certainly negates Peyla's claim of prejudice flowing from Hess's performance. Accordingly, Peyla's second ineffective assistance of counsel claim must be dismissed.

    C.    <u>**Advising Him to Reject the Government's Sentencing Offer**</u>

Peyla's final ineffective assistance of counsel claim is that trial counsel failed to properly advise him about the Government's offer of a three-year sentence if he assisted the Government in related cases against Peyla's co-defendants. In his affidavit, Peyla states that the Government offered him a three-year sentence if he verified a co-defendant's statements about another co-defendant's drug activities. Peyla Aff. ¶ 5. Peyla asserts that Hess told him to reject the Government's offer because there was no need to agree to a specific sentence since his guideline range was only 10 - 16 months and he would be given probation instead of a prison sentence. *Id*. Peyla offers the affidavits of John Sutton and David Leezy, both of whom state that they were interviewed by Hess on February 22, 2006. Doc. 2, Sutton and Leezy Affidavits. Sutton and Leezy state that they asked Hess if Peyla would be incarcerated and Hess responded that the most Peyla would get was probation. *Id*.

In his affidavit, Hess states that Peyla was appropriately advised at all stages of his representation and that Peyla "consistently made bad choices." Hess Aff. ¶¶ 6, 7. Furthermore,

11

Hess asserts that, after it was known that certain actions were under surveillance and would be testified to by two co-defendants, "no possible outcome included any discussion of probation" and that "[i]f this fantasy was entertained, it was not because of counsel's evaluation or his discussions with this defendant." *Id*. ¶ 5.

The Government contends that there was never a firm offer of a specific sentence. It is also the undersigned District Judge's experience that it would be exceedingly rare that the Government would offer a specific sentence.

Taking all of these contentions into consideration, the Court finds that Hess's performance was objectively reasonable and that the first prong of the ***Strickland*** test is satisfied. However, even if Peyla were able to satisfy the first prong , he cannot satisfy the second prong of the test because he has not established prejudice. His argument is fatally flawed because he has provided no evidence of any firm sentencing agreement other than his own statement, and the Government asserts that there was no such offer. He cannot show that, but for trial counsel's conduct, the outcome would be different. Accordingly, Peyla's third ineffective assistance of counsel claim must be dismissed.

### D.    Due Process

Peyla's final argument is that the Court calculated his sentence based on facts not found beyond a reasonable doubt in violation of his constitutional rights. Peyla argues that the findings of fact as to the amount of drugs and the obstruction of justice were based on a preponderance of evidence standard rather than a reasonable doubt standard.

Peyla is barred from raising this claim by way of § 2255. His sentence and the findings of the Court were addressed on direct appeal. ***See Peyla*, 208 Fed.Appx. 475**. The Court

stated, "Because Peyla lied repeatedly about matters that related directly to the offense of conviction, the district court's decision to impose the obstruction of justice enhancement was justified." *Id*. Furthermore, in sentencing Peyla, the Court did not increase the "statutory maximum" sentence and sentenced Peyla utilizing the Federal Sentencing Guidelines as advisory. ***Apprendi v. New Jersey*, 530 U.S. 466 (2000)**. Accordingly, Peyla's due process claim must be dismissed.

### III. Conclusion

The Court grants a § 2255 petition only when a defendant's sentence "was imposed in violation of the Constitution or laws of the United States." ***Shell v. United States*, 448 F.3d 951, 954,** *quoting* **28 U.S.C. § 2255.** Peyla failed to overcome the heavy burden and presumption that his counsel was not constitutionally effective and failed to establish a constitutional violation in the Court's calculation of his sentence. Accordingly, the Court **DENIES** Peyla's § 2255 petition (Doc. 1) and **DISMISSES** this case.

**IT IS SO ORDERED.**

**DATED this 26th day of November, 2008**

<u>s/Michael J. Reagan</u>
**MICHAEL J. REAGAN**
**United States District Judge**